**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| JULIAN HERNANDEZ ROCHA, | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 2:26-cv-02407-SHL-cgc |
| CHRISTOPHER BULLOCK, Acting Director of the New Orleans Field Office of ICE, in his official capacity, | ) | |
| Respondent. | ) | |

**ORDER GRANTING PETITION**

Before the Court is Petitioner Julian Hernandez Rocha's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, filed April 9, 2026.  (ECF No. 1.)  Hernandez Rocha challenges his continued detention in the West Tennessee Detention Facility under 8 U.S.C. § 1225(b)(2)(A), arguing that § 1226(a) is the applicable provision.  (Id. at PageID 1, 3.)  He seeks immediate release from Respondent's custody.  (Id.)  On April 15, Respondent responded in opposition.  (ECF No. 11.)  The next day, Hernandez Rocha replied.  (ECF No. 12.)

On May 14, the Court directed Respondent to update his position in light of the Sixth Circuit's recent decision in Lopez-Campos v. Raycraft, --- F.4th ---, 2026 WL 1283891 (6th Cir. 2026).  (ECF No. 13.)  In response, Respondent sought to distinguish this case from Lopez-Campos.  (ECF No. 14 at PageID 62.)  According to Respondent, Hernandez Rocha "falls outside the scope of Lopez-Campos" because he has lived in the United States for only two years and because he "was encountered shortly before," and not after, "illegally entering the United States."  (Id. at PageID 63.)  In reply, Hernandez Rocha argues that the detention at issue is not that initial encounter with border patrol in 2024, but the recent detention on February 26, 2026,

when he was detained indefinitely under the wrong statute.  (ECF No. 15 at PageID 69.)

For the reasons stated below, the Petition is **GRANTED**.

### BACKGROUND

Hernandez Rocha is a citizen of Nicaragua who entered the United States on January 15, 2024, near Lukeville, Arizona.  (Id.)  Since then, according to Hernandez Rocha, he has "demonstrated exemplary compliance with all conditions of his release, including the Intensive Supervision Appearance Program (ISAP) and Alternatives to Detention (ATD) protocols."  (Id. at PageID 69–70.)  He has maintained steady employment.  (Id. at PageID 70.)  His asylum application remains pending.  (Id.)  He has no criminal record.  (Id.)  Nevertheless, on February 26, 2026, he was detained during a scheduled check-in at the Memphis ICE sub-office.  (Id.)

### ANALYSIS

Hernandez Rocha seeks immediate release from Respondent's custody, arguing that his detention under 8 U.S.C. § 1225(b)(2)(A) is "unlawful and void ab initio."  (Id. at PageID 79.)

Respondent, while acknowledging that Lopez-Campos, 2026 WL 1283891, "is binding on this Court," contends that it "does not control the outcome of this matter."  (ECF No. 14 at PageID 62–63.)  His two arguments against applying Lopez-Campos here are that (1) Hernandez Rocha has not spent "significant time . . . within the interior of the United States" (id. at PageID 63 (quoting Lopez-Campos, 2026 WL 1283891, at *13)), and (2) "Petitioner was encountered shortly before illegally entering the United States" (id. at PageID 63).

As to the first argument, Respondent cites no authority for the conclusory assertion that Hernandez Rocha's continuous two-year residence is not a "significant time . . . within the interior of the United States" under Lopez-Campos.  Nor is the Court aware of any such authority.  In fact, the Court has granted the petitions of multiple two-year interior residents.

2

See, e.g., Landeros Quintero v. Bullock, No. 26-CV-02511, 2026 WL 1382323, at *1 (W.D. Tenn. May 18, 2026) (noting that petitioner entered the United States in 2024 and was detained in 2026).  Thus, this first argument is unavailing.

As for Respondent's second argument—that, unlike the petitioners in Lopez-Campos, border agents encountered Hernandez Rocha before he entered the United States—it lacks both factual and legal support.  Respondent points to Hernandez Rocha's Notice to Appear ("NTA"), which he refers to as Exhibit 2, but which he failed to attach.  However, assuming that the NTA to which he refers is the same document attached to an earlier filing (ECF No. 11-1), it still does not help him.  The document says nothing about the chronology of Hernandez Rocha's arrival, except that he entered on January 15, 2024, and that immigration officials issued the NTA four days later.  (Id. at PageID 46.)  Moreover, Respondent offers no authority that puts at issue the chronology of a petitioner's border crossing.

More importantly, however, the question before the Court is not the chronology of the 2024 encounter, but the legality of the current detention initiated on February 26, 2026.  And, like the petitioners in Lopez-Campos, Hernandez Rocha was detained indefinitely under 8 U.S.C. § 1225(b)(2)(A) without the possibility of a bond hearing, despite having lived "significant time . . . within the interior of the United States."  Lopez-Campos, 2026 WL 1283891, at *13.  Thus, Respondent's second argument also fails.

In the alternative, Respondent "maintains that the Court should require Petitioner to exhaust his administrative remedies."  (ECF No. 14 at PageID 64 n.1 (citing McCarthy v. Madigan, 503 U.S. 140, 144 (1992)).)  However, as the Court has ruled in recent immigration habeas petitions, e.g., Lopez Soza v. U.S. Dep't of Homeland Sec., No. 26-CV-02224, 2026 WL 1104329, at *3 (W.D. Tenn. Apr. 23, 2026), Petitioner's failure to exhaust administrative

remedies is **EXCUSED**.  The legal questions presented by the Petition are fit for prompt resolution, and exhaustion would be futile because Petitioner cannot seek meaningful and timely administrative relief.  <u>McCarthy</u>, 503 U.S. at 144 (explaining that where a statute is silent as to exhaustion, requiring exhaustion is within a court's discretion); <u>Contreras-Lomeli v. Raycraft</u>, No. 25-cv-12826, 2025 WL 2976739, at *3 (E.D. Mich. Oct. 21, 2025) ("Bond denial appeals 'typically take six months or more to be resolved at the BIA.'" (citation omitted)).

Finally, Respondent contends that, "[i]n accordance with the remedy affirmed in <u>Lopez-Campos</u>, if the Court does not first require exhaustion, the Court should order that Petitioner be provided a custody redetermination hearing within 10 business days, and if that does not occur, Petitioner should be released from custody."  (ECF No. 14 at PageID 63–64.)  However, Petitioner "rightfully state[s] that [he has] a liberty interest to be free from detention."  <u>Lopez-Campos</u>, 2026 WL 1283891, at *13.  ICE's decision to detain him without a bond hearing violated that liberty interest, which cannot be casually tossed aside.  Thus, he is entitled to immediate release.  See <u>Villafranca Lara v. Ladwig</u>, No. 26-CV-02079, 2026 WL 401204, at *10 (W.D. Tenn. Feb. 12, 2026) ("Because ICE purported to detain [Petitioner] under § 1225(b)(2)(A), which includes no provision for a bond hearing, the Court will not now order a bond hearing under § 1226(a).").

Therefore, consistent with <u>Lopez-Campos</u> and this Court's decision in <u>Villafranca Lara</u>, 2026 WL 401204, and after consideration of the record, the Petition is **GRANTED**.

## <u>CONCLUSION</u>

For the reasons stated above, the Petition is **GRANTED**.  Respondent is **ORDERED** to release Petitioner immediately.  Respondent is **ENJOINED** from pursuing Petitioner's detention

under 8 U.S.C. § 1225(b)(2)(A).  Respondent is further **ORDERED** to file a Status Report with this Court within **two business days**, to certify compliance with this Order.

    **IT IS SO ORDERED,** this 21st day of May, 2026.

s/ Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE
